IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DENELL S.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

No. 6:18-cv-01103-HZ

OPINION & ORDER

Katherine L. Eitenmiller
Mark A. Manning
HARDER, WELLS, BARON & MANNING, P.C.
474 Willamette Street
Eugene, OR 97401

    Attorneys for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. When applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Sarah L. Martin
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Denell S. seeks judicial review of the Commissioner's final decision to deny her application for supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court reverses the Commissioner's decision and remands for further administrative proceedings.

## PROCEDURAL BACKGROUND

Plaintiff applied for SSI on September 10, 2014, alleging an onset date of April 7, 2009. Tr. 145-53.[2] Her application was denied initially and on reconsideration. Tr. 89-96. On March 28, 2017, Plaintiff appeared with her counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 33-61. On June 1, 2017, the ALJ found Plaintiff not disabled. Tr. 12-29. The Appeals Council denied review. Tr. 1-3.

## FACTUAL BACKGROUND

Plaintiff alleges that she has been disabled since April 7, 2009. Tr. 145. At the time of the hearing, she was forty-eight years old. Tr. 35, 145. Plaintiff has a high school education and has past relevant work experience as a food sales clerk. Tr. 24.

///

///

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 11.

# SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the

Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the Commissioner meets that burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her application date, September 10, 2014. Tr. 17. Next, at steps two and three, the ALJ determined that Plaintiff had the following severe impairments: "lumbar spine degenerative disk disease and obesity." *Id*. The ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 20. At step four, the ALJ concluded that Plaintiff had the residual functional capacity to perform less than the full range of sedentary work as defined in 20 C.F.R. § 416.967(a) and found that she has the following limitations:

> The claimant can lift/carry ten pounds occasionally and less than ten pounds frequently. The claimant can sit for six hours and stand or walk for a combination of up to two hours out of an eight-hour workday. The claimant can push/pull within the lifting/carrying restrictions. Posturally, the claimant can climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, stoop occasionally, kneel occasionally, crouch occasionally, and crawl occasionally. The claimant's time off task can be accommodated by normal breaks.

*Id*. Because of those limitations, the ALJ concluded that Plaintiff could not perform her past relevant work. Tr. 24. At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, such as "document preparer," "charge account clerk," and "addresser." Tr. 25. As a result, the ALJ concluded that Plaintiff is not disabled. *Id*.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence

in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks omitted). The Court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id*.; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff challenges the ALJ's decision on four grounds. First, Plaintiff asserts that the ALJ failed to include all of Plaintiff's physical limitations in the RFC and vocational expert ("VE") hypothetical. Second, Plaintiff argues that the ALJ rejected the medical opinion of Plaintiff's treating physician without providing specific and legitimate reasons supported by substantial evidence in the record. Third, Plaintiff claims that the ALJ improperly rejected Plaintiff's subjective symptom testimony without identifying specific, clear, and convincing reasons supported by substantial evidence in the record. Finally, Plaintiff argues that the ALJ rejected the lay witness statement of Plaintiff's mother without providing germane reasons supported by substantial evidence in the record.

///

///

I.   **Residual Functional Capacity and VE Hypothetical**

Plaintiff argues that the ALJ erred when he failed to include Plaintiff's hand manipulation limitations in the RFC and VE hypothetical. Plaintiff asserts that her severe hand, finger, and wrist impairments caused by her bilateral carpal tunnel syndrome, bilateral CMC joint osteoarthritis, and numbness caused by chemotherapy[3] create limitations that are well-documented in the record, and the ALJ should have included them in the RFC. Failure to include those limitations in the RFC and VE hypothetical, according to Plaintiff, caused the VE to find that Plaintiff can meet the physical demands of jobs that she cannot perform.

At step two, the ALJ noted that Plaintiff's medically determinable impairments included carpal tunnel with positive Tinel's and Phalen's signs. Tr. 18. He noted that her carpal tunnel had been treated with wrist splints with "great results," her symptoms were considered mild, without evidence of erosive arthritis, and he found that her carpal tunnel syndrome was not a "severe" impairment. *Id*. In support of that finding, the ALJ cited several of Plaintiff's medical records. *Id*. Those records document the following objective findings:

- April 8, 2013: positive Phalen's and Tinel's signs. Records in the chart show positive carpal tunnel syndrome on a 2008 nerve conduction study ("NCS"). Wearing wrist splints at night with great results, needs a new pair. Minimal extensor tendon tenderness bilaterally, minimal grip strength weakness bilaterally. Tr. 265.
- January 14, 2015: not able to get strong criteria for carpal tunnel on exam. Negative Phalen's and Tinel's signs in both wrists, no synovitis or stiffness, good grip strength. Tr. 292.
- January 14, 2015: bilateral hand and wrist x-ray to evaluate for arthritis. No erosive arthritic changes, no osteoarthritis identified. Tr. 300.
- March 10, 2015: Electromyography ("EMG") study shows bilateral carpal tunnel syndrome with evidence of mild to moderate myelin involvement bilaterally (very slightly worse on the right). Tr. 323.

---

[3] Plaintiff underwent surgery and chemotherapy to treat colon cancer in 2016. The ALJ found that her colon cancer was not a severe impairment because it did not meet the twelve-month durational requirement. Tr. 18. Plaintiff does not challenge that determination.

- August 24, 2015: Rheumatology visit—"She's due for carpal tunnel surgery . . . . . She's now thinking of going ahead with surgery." Tr. 381.

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce some of Plaintiff's symptoms but that her statements about the intensity, persistence, and limiting effects of the symptoms were not "reasonably consistent with the medical evidence," and he considered her subjective symptom testimony only to the extent that it "can reasonably be accepted as consistent with the objective medical and other evidence." Tr. 21. In evaluating Plaintiff's subjective hand and wrist symptoms, the ALJ specifically discussed the lay witness testimony of Plaintiff's mother, Dr. Nosce's March 16, 2016, opinion, and the state medical evaluations. Tr. 22-23. He assigned partial weight to the lay witness testimony of Plaintiff's mother, who said that Plaintiff had chronic pain in her hands and elbows, because the activities that Plaintiff can perform—including checking the mail, talking on the phone, watching television, attending appointments and errands, performing chores, and grocery shopping for a few hours at a time a few times a month—show that Plaintiff has few functional limitations. The ALJ's explanation for giving "little weight" to her mother's assessment of Plaintiff's restrictions focused only on his comparison of the lower back symptoms that Plaintiff's mother described to Plaintiff's medical records, and he did not address Plaintiff's mother's description of Plaintiff's hand and wrist limitations. Tr. 22.

Dr. Nosce, Plaintiff's treating physician, opined that Plaintiff had significant hand and wrist limitations, particularly with manipulation. Tr. 317-21. The ALJ assigned "little weight" to Dr. Nosce's opinion and incorporated only the findings supported by objective medical evidence into the RFC. Tr. 23. The ALJ indicated that "[f]or instance, although [Dr. Nosce] stated that there were manipulative limits, the claimant's carpal tunnel was deemed mild/moderate, and treated with splints effectively, as discussed above." Tr. 23 (citing Tr. 323,

Plaintiff's 2015 EMG study results). From the mild to moderate EMG study findings, the ALJ concluded that her subjective symptoms must also be mild to moderate, but he provided no basis for that conclusion. There is no evidence in the record to support the ALJ's determination that "the presence of bilateral carpal tunnel syndrome with evidence of mild to moderate myelin involvement bilaterally" noted on Plaintiff's EMG study, Tr. 323, could not produce the manipulative limitations found by Dr. Nosce. In doing so, the ALJ erred. *See* 20 C.F.R. § 404.1545(e) ("Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone"). And carpal tunnel is only one of the causes of Plaintiff's wrist and hand limitations; the ALJ failed to consider Plaintiff's bilateral CMC joint osteoarthritis and history of chemotherapy when he rejected her subjective symptom testimony.

The ALJ faulted Dr. Nosce for not listing "objective factors or narrative information to justify the findings," Tr. 23, but she did cite objective evidence in support of her findings. In her opinion, Dr. Nosce noted restricted range of motion in Plaintiff's wrists and positive Tinel's and Phalen's signs. Tr. 318. Moreover, the ALJ himself noted several objective findings that supported Dr. Nosce's findings, including positive Tinel's and Phalen's signs dating to 2013, Tr. 18 (citing Tr. 265), and the 2015 EMG study, Tr. 323.

In addition to the objective findings identified by Dr. Nosce and the ALJ, several other examples exist in the record. Six days before Dr. Nosce provided her March 16, 2016, opinion, she documented decreased flexion and extension in Plaintiff's wrists, positive Tinel's and Phalen's signs, and decreased grip strength. Tr. 535. In August 2015, Plaintiff saw Dr. Nosce to discuss a referral to a hand surgeon for treatment of her carpal tunnel syndrome, and Dr. Nosce noted mildly decreased thumb strength, a positive Phalen's sign, and a negative Tinel's sign. Tr.

539. In October 2015, Plaintiff saw Dr. Butters, who noted mild crepitus at the base of Plaintiff's right thumb, basal tenderness, and a positive Tinel's sign. Tr. 578. He diagnosed Plaintiff with bilateral grade 1/2 basal arthritis and bilateral carpal tunnel syndrome. *Id*. He gave Plaintiff an injection in her right carpal tunnel and noted that she "likely will come to carpal tunnel release." Tr. 574, 578. The month before the hearing, in February 2017, Dr. Butters noted bilateral primary osteoarthritis of the first CMC joints and injected the CMC joint of her left hand. Tr. 573.

The state agency reviewing physicians also identified limitations in Plaintiff's ability to manipulate objects with her hands. Drs. Martin Kehrli and Thomas Davenport found that Plaintiff was capable of light work, but she was limited to frequent (a reduction from constant) hand manipulations with both hands, including handling and fingering. Tr. 70-72, 82-85. The ALJ said that he did not give the agency reviewing physicians' assessments "much weight since . . . [he] found the claimant more limited, to sedentary work, with more restrictive posturals, given the claimant's severe back impairment combined with her other nonsevere impairments, including recent cancer treatment and any residual effects." Tr. 23. The ALJ did not include that frequent handling and fingering limitation into the RFC because "the record reflects limited treatment, mild/moderate findings, and the claimant testified that she has not undergone surgery." Tr. 23-24. Despite finding that the agency reviewing physicians underestimated the degree of Plaintiff's lower back limitations, the ALJ effectively found that the reviewing physicians overestimated her hand and wrist limitations when he declined to include the limitation of handling and fingering to frequently into the RFC. *Id*.

The ALJ was required to include in the RFC all limitations stemming from Plaintiff's medically determinable impairments, including those that were not severe. 20 C.F.R. §

416.945(a)(2). To determine what Plaintiff's RFC was, the ALJ was required to consider all the relevant medical and other evidence. 20 C.F.R. § 416.945(a)(3). The ALJ's conclusion that Plaintiff had received "limited treatment" for her hand and wrist issues, had not undergone surgery, and that her hand and wrist conditions had been "treated with splints effectively," Tr. 23-24, demonstrates that he did not consider the record as a whole.

A comprehensive review of the record shows that Plaintiff received significant treatment for her hand and wrist issues and that splints were only somewhat effective in treating those problems. Plaintiff had EMG studies in 2008 and 2015 that showed positive carpal tunnel syndrome, Tr. 265, 323; hand and wrist x-rays in 2015, Tr. 299; several medical visits to evaluate and treat her hand and wrist problems, *see, e.g.*, Tr. 265, 260, 292, 542, 306-07, 539, 578; and obtained new wrist splints in March 2013 and April 2015 because she had worn them out, Tr. 265, 542. *See also* Tr. 539 ("she has certainly been very compliant with her wrist braces"); Tr. 599 (she was diagnosed with carpal tunnel in 2002; she wears nighttime braces "which are mildly helpful"). Accordingly, the ALJ's decision not to incorporate any hand or wrist limitations into the RFC was unsupported by substantial evidence in the record. *Vasquez*, 572 F.3d at 591 (substantial evidence is evidence that a "reasonable mind might accept as adequate to support a conclusion" and must be "more than a mere scintilla").

**II.  Opinion of Dr. Nosce**

Social Security law recognizes three types of physicians: (1) treating, (2) examining, and (3) non-examining. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, the ALJ should give more weight to the opinion of a treating physician than to the opinion of a physician who did not treat the claimant. *Id.*; 20 C.F.R. § 404.1527(c)(1)-(2). The ALJ should give more

weight to the opinion of an examining physician than to the opinion of a non-examining physician. *Garrison*, 759 F.3d at 1012.

If a treating physician's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing" reasons supported by substantial evidence in the record. *Ghanim*, 763 F.3d at 1160-61. Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* at 1161; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The ALJ assigned "little weight" to Dr. Nosce's evaluation because (1) her findings were inconsistent with the record as a whole, (2) she "lacks program knowledge," and (3) she did not "list objective factors or narrative information to justify the findings." Tr. 23. As discussed above, Dr. Nosce's findings were not inconsistent with the record, and she did list objective factors to justify her findings, including her examination findings. Tr. 318. The ALJ articulated no basis for his conclusion that Dr. Nosce "lacks program knowledge." A few days before Dr. Nosce wrote her opinion, she noted that Plaintiff had asked her to provide an opinion about whether Plaintiff was disabled, and Dr. Nosce indicated, "I do not see that she is ever going to be able to work in a competitive, 8-hour, 5-day-per-week job again." Tr. 535. Dr. Nosce knew that she was evaluating Plaintiff to determine whether Plaintiff was permanently disabled. Given the length of time that Dr. Nosce treated Plaintiff, lack of program knowledge is not a legitimate reason for the ALJ to reject Dr. Nosce's opinion. *Sanchez v. Berryhill*, No. 2:17-cv-06691-JDE, 2018 WL 5848856, at *4 (C.D. Cal. Nov. 6, 2018) (ALJ erred when he failed to explain how a purported lack of program knowledge "would have any bearing on [the doctor's] ability to assess the limitations of a patient he saw and treated on a monthly basis for years").

Since Dr. Nosce was a treating physician, her opinion was entitled to great weight because it was supported by substantial evidence in the record. The agency reviewing physicians agreed that Plaintiff has at least some degree of limitation in her ability to perform hand manipulations, albeit to a lesser degree than Dr. Nosce found. In other words, all three doctors who offered an opinion concur that, at a minimum, Plaintiff is limited to frequent handling and fingering. The ALJ provided no specific or legitimate reason not to include that limitation in the RFC.

In deciding whether to accept or reject a treating physician's opinion, the ALJ must consider whether the physician examined the plaintiff, the length and frequency of examinations during the treatment relationship between the physician and patient, the nature and extent of the treatment relationship, the supportability of the physician's opinion, its consistency with the record as a whole, the specialization of the physician, and other relevant factors. 20 C.F.R. § 404.1527(c). Dr. Nosce treated Plaintiff every one to three months over a period of eight years. Tr. 317. During that time, Dr. Nosce followed Plaintiff's chronic conditions and coordinated her referrals to specialists. *See, e.g.*, Tr. 529-42. Dr. Nosce's carpal tunnel syndrome diagnosis was supported by two EMG studies, Plaintiff's ongoing positive Phalen's and Tinel's signs, and Dr. Butters's confirmation of Dr. Nosce's carpal tunnel syndrome diagnosis. Tr. 603. Thus, substantial evidence exists in the record to support Dr. Nosce's opinion, and the ALJ erred when he rejected it. *See* S.S.R. 96-2p at 4 (Cum. Ed.1996), *available at* 61 Fed. Reg. 34,490, 34,491 (July 2, 1996) ("In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight").

///

///

### III. Plaintiff's Subjective Symptom Testimony

The ALJ engages in a two-step analysis to determine credibility. First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted). Second, if the claimant has presented that evidence, and there is no evidence of malingering, then the ALJ must give "specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id*. That standard is difficult to meet. *Garrison*, 759 F.3d at 1015 ("The clear and convincing standard is the most demanding required in Social Security cases").

The ALJ found that Plaintiff's medically determinable impairments could be expected to cause some of her symptoms, but Plaintiff's symptoms were inconsistent with the objective medical evidence in several respects. Tr. 21. First, the ALJ found that her lumbar spine complaints were not reasonably consistent with the medical evidence. Second, he found that Plaintiff had received "very limited treatment for [her] back condition and/or other nonsevere impairments." Tr. 22. Third, the ALJ found that Plaintiff can "perform a full range of daily activities," which he found inconsistent with her alleged symptoms. *Id*.

In support of his finding that Plaintiff's lumbar symptoms were inconsistent with the medical evidence, the ALJ cited records that do not reflect the lumbar spine complaints documented in the record as a whole and, notably, the ALJ relied on several records of Dr. Nosce, whose opinion he had rejected. For example, the ALJ relied on records from 2010, Tr. 21, which was four years before Plaintiff's application date of September 10, 2014. He also noted that in September 2013, Plaintiff reported that her back pain had been well-controlled with medications. Tr. 21 (citing Tr. 264). However, that medical record, which documented a visit

with Dr. Nosce, also states that Plaintiff presented with an acute worsening of her back pain. Tr. 264. Dr. Nosce noted that Plaintiff was experiencing muscle spasms with shooting pains down her right thigh to her knee. *Id*. Dr. Nosce also stated that Plaintiff's "normal pain regimen is not working." *Id*. In addition, the ALJ relied on the record of Dr. Nosce's January 14, 2015, visit, in which Dr. Nosce noted that it was unclear to her whether Plaintiff would be a surgical candidate for her back pain. Tr. 22 (citing Tr. 292). In that record, Dr. Nosce noted "markedly decreased" range of motion in Plaintiff's back and decreased sensation in her left lateral thigh, calf, and foot. Tr. 292.

In addition to Dr. Nosce's records, the ALJ relied on 2015 and 2016 medical records from Plaintiff's oncologist, who was treating her for colon cancer, and Plaintiff's gynecologist, who saw her for a preoperative examination before a hysteroscopy, to support of his finding that Plaintiff's subjective complaints about her back were unsupported by the medical evidence. Tr. 22 (citing Tr. 439, 443, 446, 449, 453, 457, 461, 465, 469, 473, 480, 484, 502 (a blank page)). Plaintiff's oncologist and gynecologist did not treat Plaintiff's back pain. *Id*. The ALJ did not, apparently, examine whether Plaintiff's subjective complaints were supported by medical evidence from a more relevant source—her orthopedic specialist. In 2010, the physician treating Plaintiff's back problems, Dr. Phillips, noted abnormalities at several levels of Plaintiff's thoracic spine, including mild degenerative changes, disc space narrowing, and spondylosis, Tr. 587, and noted that a 2011 lumbar MRI report in her orthopedic records, Tr. 631-32, showed disc and facet abnormalities at multiple levels.

The ALJ cited Plaintiff's limited conservative treatment, lack of progression or worsening of her back condition, and lack of surgical recommendation to further support his conclusion that her testimony was inconsistent with the medical evidence. Tr. 22. He did not

explain the basis for his conclusion that, without any worsening of her condition or a surgical recommendation, the other objective evidence of Plaintiff's back problems did not explain or support her reported symptoms.

Moreover, Plaintiff was undergoing treatment for colon cancer between February 2016 and November 2016, Tr. 332-56, 394-498, and she testified that she put treating her back on hold while she underwent abdominal surgery and several months of chemotherapy. Tr. 41-42. The ALJ did not provide clear and convincing reasons to explain why his findings of limited treatment, lack of progression or worsening, and lack of surgical intervention undermine Plaintiff's subjective symptom testimony in light of the interruption in treating her back condition to undergo cancer treatment.

The ALJ also found that Plaintiff's testimony was inconsistent with her ability to "perform a full range of daily activities." Tr. 22. Because Plaintiff could get outside four days a week to check the mail, attend appointments, and run errands, and because she could grocery shop a few times a month, the ALJ found that Plaintiff could perform a full range of daily activities. *Id*. The ALJ also cited one instance of dancing in 2012 to exercise, Tr. 267, Plaintiff's ability to prepare simple meals, perform light household chores, *id*. (citing Tr. 204, a form that does not discuss her daily activities), and Plaintiff's testimony at the hearing that she helped her disabled mother when she could.[4] *Id*. The reasons the ALJ cited fall far short of establishing clear and convincing reasons to reject Plaintiff's testimony, which was supported by the lay witness statement of her mother and the limitations described by her treating physician.

///

---

[4] The ALJ took Plaintiff's statement about helping her mother out of context. Plaintiff testified that while she had helped her mother in the past, others in her household had taken over caring for both her and her mother. Tr. 54-55.

## IV. Lay Witness Statements of Plaintiff's Mother

To reject a lay witness's testimony, the ALJ must state germane reasons supported by substantial evidence in the record. *Molina*, 674 F.3d at 1114. The reasons germane to each witness must be specific. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). A general lack of support in the medical evidence as a whole is not a valid basis to disregard lay witness testimony. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017) (citing *Bruce*, 557 F.3d at 1116). Plaintiff's mother's lay witness statement said that Plaintiff could not walk or sit for long periods, needed to lie down to relieve her back pain throughout the day, and experienced chronic pain in her hands, elbows, and feet. Tr. 196. Plaintiff's mother said that Plaintiff grocery shopped, helped with chores, and helped care for cats when she was able to. Tr. 197. Her mother also noted that Plaintiff cannot chop meat or vegetables. Tr. 198. The ALJ gave little weight to the testimony of Plaintiff's mother about Plaintiff's physical limitations but weighed heavily Plaintiff's mother's statements about the daily activities that Plaintiff can perform. Tr. 22.

According to the ALJ, Plaintiff's daily activities showed that Plaintiff had few physical limitations, which he found consistent with the record and the limited treatment that Plaintiff had received. Tr. 22. The ALJ found that the restrictions reported by Plaintiff's mother were "unsupported by objective factors in the record and/or treatment records," and gave them little weight, although he cited no particular record to support that finding. *Id*. That general citation to the record as a whole is not a valid basis to disregard her testimony. *Diedrich*, 874 F.3d at 640 (citing *Bruce*, 557 F.3d at 1116).

Similarly, the ALJ did not explain his finding that Plaintiff's ability to help with housework "when able," check the mail, and grocery shop a few times a month showed that she

has few limitations. *Garrison*, 759 F.3d at 1016 (claimant's ability to "talk on the phone, prepare meals once or twice a day, occasionally clean one's room, and, with significant assistance, care for one's daughter, all while taking frequent hours-long rests, avoiding any heavy lifting, and lying in bed most of the day, is consistent with the pain that [the claimant] described in her testimony. It is also consistent with an inability to function in a workplace environment."); *Smolen v. Chater*, 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996) (ALJ may reject a claimant's testimony if the claimant can spend a substantial part of their day performing household chores or other activities that are transferable to a work setting, but many household activities may not be transferable to a work setting where it might be impossible to rest periodically or take medication).

As a result, the ALJ erred when he failed to cite any germane reason to reject the lay witness testimony of Plaintiff's mother. *Diedrich*, 874 F.3d at 640 ("The fact that lay testimony and third-party function reports may offer a different perspective than medical records alone is precisely why such evidence is valuable . . . . A lack of support from medical records is not a germane reason to give 'little weight' to those observations.").

## V. Credit as True

For each of the ALJ's errors, Plaintiff asks the Court to credit the opinion or testimony as true and remand for payment of benefits. In Social Security cases, remands may be for further administrative proceedings or for an award of benefits. *E.g., Garrison*, 759 F.3d at 1019. To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Id.* at 1020; *Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Garrison*, 759 F.3d at 1020. Second, the record must be fully developed, and further

administrative proceedings would serve no useful purpose. *Id.* Third, if the Court remands the case and credits the improperly discredited evidence as true, the ALJ would be required to find the claimant disabled. *Id.* To remand for an award of benefits, each part must be satisfied. *Id.* The "ordinary remand rule" is "the proper course," except in rare circumstances. *Treichler*, 775 F.3d at 1101.

As explained throughout this opinion, the ALJ failed to provide legally sufficient reasons to reject Dr. Nosce's opinion and the testimony of Plaintiff and her mother. The record here, however, is not fully developed. It is for the Commissioner, not the Court, to determine the frequency with which Plaintiff can handle and finger objects, when it has properly considered the evidence in the record as a whole. The record includes VE testimony about the jobs that Plaintiff can perform with no hand manipulation limitations, Tr. 58-59, and VE testimony that Plaintiff cannot perform any sedentary jobs if her ability to perform hand manipulations is limited to occasional, Tr. 59-60, but the record contains no VE testimony about what jobs, if any, Plaintiff can perform with a limitation of hand manipulation to "frequently," as the agency reviewing physicians found. It is also not clear that, after properly crediting the evidence, the ALJ would be required to find Plaintiff disabled. Accordingly, the extraordinary circumstances that justify remand for payment of benefits are not present here, and remand for further administrative proceedings is appropriate.

///

///

///

///

///

## CONCLUSION

For these reasons, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

IT IS SO ORDERED.

DATED: _12/6/19_.

_____
MARCO A. HERNÁNDEZ
United States District Judge